**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 21 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SHANA D. TESNAR**
Noblesville, Indiana

ATTORNEYS FOR APPELLEE:

**RODNEY T. SARKOVICS**
**KEVIN G. KLAUSING**
Campbell Kyle Proffitt LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GLENDA A. WILSON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 29A04-1112-DR-666 |
| | ) | |
| ROLAND B. WILSON, JR., | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HAMILTON CIRCUIT COURT
The Honorable Paul A. Felix, Judge
Cause No. 29C01-1002-DR-374

**June 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Glenda A. Wilson ("Mother") appeals the trial court's order regarding payment of educational expenses by Roland B. Wilson, Jr. ("Father") for the parties' minor daughter Hannah. On appeal, Mother contends that the trial court erred in failing to order Father to pay Hannah's educational expenses for college when Hannah had a grade point average ("GPA") of 2.499 and the parties' settlement agreement conditioned the payment of educational expenses on Hannah maintaining a GPA of 2.5 on a 4.0 scale. *Appellant's App.* at 24.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY[1]

Father and Mother (together, "the parties") were married in May 1976, and are the parents of five children. *Tr.* at 66. In March of 2010, Mother filed a petition for legal separation. Two months later, Father filed a petition for dissolution of the marriage. At that time, two of the parties' children were over the age of eighteen, but under the age of twenty-one. The parties' son enlisted in the military and thereby became emancipated; therefore, their daughter Hannah was their only unemancipated child.

Father is a self-employed physician and, according to his Child Support Obligation Worksheet, makes $4,751.20 gross income per week. *Respondent's Ex.* B. During their marriage, Mother was employed by Father. She is now unemployed. Mother is diabetic and

[1] On April 5, 2012, this court held in abeyance Father's "Motion to Strike Certain Portions of Appellant's Statement of Facts" and Father's "Motion to Strike Certain Portions of Appellant's Argument." On April 10, 2012, Mother filed "Appellant's Response to Appellee's Motion to Strike Certain Portions of Appellant's Statement of Facts" and "Appellant's Response to Appellee's Motion to Strike Certain Portions of Appellant's Argument." Having reviewed the matter, Father's two motions, which were previously held in abeyance, are now denied.

on an insulin pump. Additionally, she has a rare foot disease that causes her foot to shatter; when this happens, Mother is required to be in a cast from six months to a year. Mother receives unemployment compensation in the amount of $170.00 per week.

On or about October 26, 2010, the trial court approved the parties' "Verified Waiver of Final Hearing, Mediated Settlement Agreement and Decree of Dissolution of Marriage" ("the Settlement Agreement"). On that date, Hannah was a freshman at Anderson University. In Paragraph 3.04 of the Settlement Agreement, Father agreed to pay Hannah's college expenses in lieu of child support, "limited to a four year undergraduate education and [] conditioned upon Hannah maintaining no less than a 2.5 [GPA] on a 4.0 scale." *Appellee's App.* at 10. Paragraph 4.01 of the Settlement Agreement required Father to pay Mother rehabilitative spousal maintenance in the amount of $1600.00 per month for thirty-six months. *Id.*

Hannah's transcript from Anderson University, which Father introduced during the hearing, reveals that the University accepted six hours of college credit, which Hannah had earned at Ivy Tech Community College ("Ivy Tech") in Kokomo, three hours of which was "Intro to Microcomputers," and three hours of which was "English Composition." *Respondent's Ex.* A. Although the University accepted the Ivy Tech credits, Hannah's grades, which Mother testified were "a B average or better," did not transfer. *Tr.* at 67. Hannah received from Anderson University a 2.400 GPA in the fall of 2010, a 2.410 GPA in the spring of 2011, and a 4.000 GPA in the summer of 2011. *Respondent's Ex.* A. These grades, excluding the grades from Ivy Tech, constituted a total cumulative GPA of 2.499 for

Hannah's freshman year at Anderson. *Id*. Father paid Hannah's educational expenses for the first two semesters at Anderson, but citing her inadequate GPA under Paragraph 3.04, Father did not pay for those expenses after her freshman year.

On or about June 15, 2011, Mother filed a "Verified Petition for Additional Relief," which included requests for relief related to numerous issues, some of which are not relevant to this appeal.[2] *Appellant's App.* at 5-6. In response, Father filed a motion to dismiss, and following a hearing, the trial court ordered Mother to break up her petition into separate "petitions/motions." *Id*. at 6. Thereafter, Mother filed six additional pleadings.[3]

On or about September 26, 2011, an evidentiary hearing was held on all pending issues, and the trial court made its initial findings in an entry dated that same date. *Appellant's App*. at 10-11. In that order, the trial court, in pertinent part: (1) found Father was not in contempt for failure to pay college expenses "pursuant to the Court finding the Child did not meet the [GPA] criteria as specified in the [Settlement Agreement]"; and (2) ordered Father to pay child support in lieu of college expenses. *Id*. at 10. The trial court also encouraged the parties to "work towards an agreement to resolve remaining issues" and "to submit either an Agreed Entry or Proposed Orders electronically to the court reporter by

---

[2] In addition to requesting that Father pay for Hannah to attend Anderson University, Mother requested in the petition that Father: (1) pay for Hannah's other school-related expenses, including her laptop computer, transportation, choir dress and music books; (2) return Mother's personal property of a fishing jacket, desk, and gun; (3) convey title to certain vehicles and pieces of property; (4) pay certain bills; and (5) change his mailing address with the post office.

[3] The pleadings included the following: (1) "Verified Motion for Rule to Show Cause"; (2) "Verified Petition to Add Additional Party"; (3) "Motion to Clarify Decree [of] Dissolution"; (4) "Petition to Modify Child Support"; (5) "Verified Petition to Distribute Omitted Property"; and (6) "Verified Petition for Attorney Fees." *Appellant's App.* at 6-7, 26-52; *Appellee's App.* at 36-45.

October 11, 2011." *Id*. at 10-11. When the parties failed to reach an agreement, the trial court entered its final order on October 18, 2011. The pertinent portions of that order were as follows: (1) Father shall pay child support to Mother in the amount of $58.00 per week; and (2) in the event Hannah achieves a GPA of 2.5 for a semester of twelve credit hours or more, Father shall pay college expenses in lieu of child support. *Id*. at 12-13. The trial court also reiterated its previous finding that Father was not in contempt for failing to pay Hannah's college expenses. *Id*. at 14.

In her motion to correct error, Mother argued that the trial court erred by finding that Father did not have to pay for Hannah's college because her 2.499 GPA at the start of the 2011 fall semester did not meet the required 2.5 GPA set forth in Paragraph 3.04 of the Settlement Agreement. Father responded that the Settlement Agreement is a contract, the terms of which were not ambiguous, and therefore the trial court cannot look to extrinsic evidence. On November 21, 2011, the trial court summarily denied Mother's motion to correct error. Mother now appeals.

## DISCUSSION AND DECISION

Mother contends that the trial court abused its discretion in finding that Father was not required to pay Hannah's educational expenses for her sophomore year of college. Provisions for the payment of educational expenses are in the nature of child support. *Schacht v. Schacht*, 892 N.E.2d 1271, 1275 (Ind. Ct. App. 2008). "A trial court's decision regarding child support will be upheld unless the trial court has abused its discretion." *Sexton v. Sedlak,* 946 N.E.2d 1177, 1183 (Ind. Ct. App. 2011), *trans. denied*. "A trial court

5

abuses its discretion when its decision is clearly against the logic and the effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Id.*

When dissolving a marriage, "the parties are free to craft an agreement providing for the maintenance of either party, the custody and support of the parties' children, and the disposition of property." *Bailey v. Mann,* 895 N.E.2d 1215, 1217 (Ind. 2008) (citing Ind. Code § 31–15–2–17). "Settlement agreements become binding contracts when incorporated into the dissolution decree and are interpreted according to the general rules for contract construction. *Id.* (citing *Shorter v. Shorter,* 851 N.E.2d 378, 382-83 (Ind. Ct. App. 2006)). Unless the terms of the agreement are ambiguous, they will be given their plain and ordinary meaning. *Bandini v. Bandini*, 935 N.E.2d 253, 260 (Ind. Ct. App. 2010). "Terms are ambiguous if a reasonable person would find them subject to more than one interpretation, but are not ambiguous merely because the parties disagree concerning their proper interpretation. *Id.* (citing *Fackler v. Powell,* 891 N.E.2d 1091, 1096 (Ind. Ct. App. 2008), *trans. denied*). "Interpretation of a settlement agreement, as with any other contract, presents a question of law and is reviewed de novo." *Id.*

The language of the Settlement Agreement at issue in this appeal pertains to child support and educational expenses, and provides as follows:

> 3.01. <u>Support</u>. In lieu of a weekly child support obligation, and because Hannah is in college, no child support shall be paid, since [Father] is paying for all of Hannah's net post-secondary educational expenses, as set forth in paragraph 3.04 below, as well as the obligation in 3.02 [medical insurance] below.
>
> . . . .

6

3.04. <u>Post-High School Education</u>. Hannah is currently attending Anderson University as a freshman. Hannah shall first be timely required to apply for and accept all awards of financial aid, including grants and scholarships for payment of college expenses. [Father] shall pay all remaining costs actually incurred for tuition, on-campus room and board, mandatory fees, books, and necessary uninsured medical expenses. *[Father]'s payment of said expenses shall be limited to a four year undergraduate education and shall be conditioned upon Hannah maintaining no less than a 2.5 grade point average on a 4.0 scale*, providing both parents prompt copies or access to grade reports (including online access) *and maintaining full-time enrollment*.

*Appellee's App.* at 9-10 (emphasis added). Specifically, the parties disagree as to whether Hannah's GPA of 2.499 satisfies the Settlement Agreement term that Father's payments are conditioned on her maintaining a 2.5 GPA on a 4.0 scale.

Our review of the disputed language in Paragraph 3.04 of the Settlement Agreement reveals that an ambiguity exists regarding the manner by which the parties intended to calculate a 2.5 GPA under conditions, such as this, where the educational institution reports the GPA not to the nearest one-tenth of a point, but instead, to the nearest one-thousandth of a point. During the trial court hearing, Mother's counsel noted that there are various types of 4.0 scales—including the one used by the College Board—and asked Father which was the intended scale against which Hannah's GPA was to be judged. *Tr.* at 13. Father responded that he "went by the scale as determined by Anderson University." *Id.*

Mother's counsel questioned Father more extensively about the calculation of Hannah's GPA as follows:

Q. Well, Doctor, in your training, a 4.0 is the number that is different from and has different meanings than a 4.00, does it not?

A. 4.0 is carried out to the tenth, 4.00 is carried out to the hundredth.

Q. Right. So a 2.5 could represent all those numbers that are roundable to two digits to 2.5 --

. . . .

A. Right.

. . . .

A. I don't believe in, when it comes to GPA[s] you round numbers. You should go by the exact number that's given by the school.

Q. But you chose in your agreement, did you not, to use a 4.0 scale, not a 4.00 scale . . . ?

A. I believe so.

Q. And you agree with me, do you not, that those two numbers are different[;] they have different significance to those trained in mathematics?

A. I believe in this context, they're the same.

Q. I didn't ask about this context.

A. That's my best answer.

Q. Sir, you understand that – well, have you calculated your daughter's GPA using the college board scale?

A. No, I went by Anderson University's scaling.

. . . .

Q. . . . . Sir, also in your training, you've learned about the concept of rounding, did you not, rounding numbers?

A. Yes.

Q. And if you would round a 2.499 to a 4.0 or a two digit scale, not a four digit scale, what would it be?

8

A.      Say that again.

Q.      If you were to round her grade point average of 2.499 to two significant numbers, the same as your 4.0 scale is two significant numbers, what would her grade point average be?

A.      If you rounded up higher than what this number is, it would be 2.5.

Q.      Right.  And you wouldn't round it down?  Under the rounding rules, you would round it up, would you not?

A.      Yes, under the rounding rules.

Q.      So a 2.5 or greater, two digits, two significant digits on a 4.0, two significant digits to two significant digits, her grade point average is 2.5 or greater; fair statement?

A.      Yes.

Q.      And if its [sic] 2.5 or greater, you have an obligation to pay for her college, do you not?

A.      Yes, but 2.499 is not at the 2.5 level.

Q.      I understand that.  But mathematically, significance it is[,] [sic] right?

A.      I'm not sure.

Q.      To a chemist, it would be[,] right?

A.      Yeah.

Q.      And to a doctor, it would be?

A.      Yeah.

Q.      Now, did you mean some trick in your language when you said a 2.5 on a 4.0 scale?

A.      No.

9

*Tr*. at 18-24.

The trial court, while finding that Hannah did not meet the specified 2.5 GPA, made no specific finding regarding the manner by which to calculate Hannah's GPA. Additionally, the trial court made no finding as to any consideration that the court should give to the courses that Hannah received credit for from Ivy Tech. Instead, the trial court set forth the following provisions:

3. In the event that Hannah achieves a grade point average of *2.5 for a semester of 12 credit hours or more*, Father's child support obligation shall cease effective as of the first day of her classes for the following semester, and Father shall resume paying for Hannah's college expenses pursuant to paragraph 3.04 of the Mediated Settlement Agreement.

4. If this resumption of Father's payment of college expenses occurs, and Hannah's grade point average subsequently *falls to below a 2.5 for any semester*, Father's obligation to pay for her next college semester expenses pursuant to paragraph 3.04 of the Mediated Settlement Agreement shall cease and his obligation to pay child support . . . shall automatically commence on the first Friday following the end of the semester. Father's obligation to pay college expenses may resume after a semester (12 credit hours or more) where Hannah's GPA is 2.5 or greater. . . .

*Appellant's App.* at 13.

At the hearing, Father maintained that the 2.5 GPA stated in the Settlement Agreement was based on Anderson's grading system. At the time the parties entered into the Settlement Agreement, Hannah was attending Anderson University and, had Father intended to base the Settlement Agreement GPA on Anderson's scale, he could have insisted that the GPA requirement be expressed to one-thousandth of a point. Father understood that a 4.0 scale

10

has different significance than a 4.00 or a 4.000 scale, *tr.* at 18-20; however Father agreed to a GPA of 2.5, i.e., he agreed to the GPA being expressed to just one-tenth of a point.

Father had both mathematical and scientific training, and stated he did not mean "some trick in [his] language when [he] said a 2.5 on a 4.0 scale." *Tr.* at 23. Since the Settlement Agreement set the GPA at a number that expressed the GPA to one-tenth of a point, it is reasonable that an earned GPA expressed to the one-thousandth of a point would have to be rounded. Here, an earned GPA of 2.499, which is just one-thousandth of a point away from a 2.5 GPA, should reasonably have been rounded to 2.5. The trial court erred in failing to round Hannah's 2.499 GPA to 2.5.

The trial court also erred in analyzing the following language from Paragraph 3.04 of the Settlement Agreement:

> [Father]'s payment of said expenses . . . shall be conditioned upon Hannah maintaining no less than a 2.5 grade point average on a 4.0 scale . . . and maintaining full-time enrollment.

*Appellee's App.* at 10. The trial court interpreted this language to mean that Hannah must "achieve[] a grade point average of *2.5 for a semester of 12 credit hours or more*," i.e., that the important consideration was the previous semester instead of the more reasonable interpretation that the GPA standard to consider is the cumulative GPA. When asking for educational expenses, Hannah must show that she is attending college full time and that her grade point average, rounded to one-tenth of a point, reaches the standard of a 2.5 GPA, as set forth in Paragraph 3.04 of the Settlement Agreement. Under the facts presented to the

11

trial court, we find that Hannah made that proof at the start of her sophomore year, and therefore, Father was obligated to pay for at least the fall semester of her sophomore year.[4]

Finding that Hannah's GPA triggered Father's obligation to pay for her educational expenses under Paragraph 3.04 of the Settlement Agreement, it was error for the trial court to fail to hold that Father was responsible for payment of Hannah's educational expenses for the fall of her sophomore year. It was also error for the trial court to order Father to pay Mother child support pursuant to Paragraph 3.01 of the Settlement Agreement.

We remand with instructions that the trial court find Father was obligated to pay for the fall semester of Hannah's sophomore year. Additionally, we instruct the trial court to: (1) determine whether Hannah has maintained her full-time enrollment in college; (2) determine whether Hannah has maintained a cumulative grade point average that rounds up to at least a 2.5 GPA; (3) calculate, pursuant to Paragraph 3.04 of the Settlement Agreement, the sum of money that Father owes Hannah for educational expenses; and (4) calculate the sum of child support that Father improperly paid Mother, pursuant to Paragraph 3.01 of the Settlement Agreement, in lieu of educational expenses.[5] We also instruct the trial court to

---

[4] Mother also contends that the trial court should have averaged into Hannah's cumulative GPA the grades that she attained for the six credit hours from Ivy Tech. Finding that Hannah reached the 2.5 GPA, which was required to trigger Father's payment of the educational expenses under Paragraph 3.04, we need not address whether the trial court erred in failing to include the Ivy Tech grades in its calculation of Hannah's GPA.

[5] Mother also "asks this court to find that the Post-Secondary Education Worksheet is not required and should not be used to calculate Dr. Wilson's basic child support obligation, and [to] reverse the Trial Court's finding accordingly." *Appellant's Br.* at 18. Finding, as we do, that Father owes Hannah educational expenses, and therefore is not obligated at this time to pay child support pursuant to Paragraph 3.01 of the Settlement Agreement, we do not address this issue.

12

order Father to pay Mother the amount of money that represents the difference between the above-calculated educational expenses and the above-calculated child support.

Reversed and remanded with instructions.

BAKER, J., and BROWN, J., concur.